UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REYNALDO PEDREGON,<br><br>Defendant. | Case No. 09-CR-00586-LHK-1<br>Case No. 14-CV-04679-LHK<br><br>**ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Re: Dkt. No. 53 |

Before the Court is a motion pursuant to 28 U.S.C. § 2255 filed by Defendant Reynaldo Pedregon ("Defendant"), acting *pro se*. In the motion, Defendant challenges his sentence following a conviction for possession with intent to distribute of more than fifty grams of methamphetamine. Defendant challenges his sentence on three grounds: (1) that Defendant's counsel was constitutionally ineffective, (2) that Defendant's conviction resulted from gross government misconduct and that Defendant is therefore actually innocent of the crime for which he was convicted, and (3) that the evidence presented at trial was not sufficient to convict Defendant. ECF No. 53 ("Mot.").

Having considered Defendant's motion, the response brief of the Government, the record in this case, and the relevant law, the Court DENIES Defendant's motion to vacate his sentence

1
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

under 28 U.S.C. § 2255.

## I. BACKGROUND

### A. Factual Background

On January 11, 2012, Defendant was convicted of possession with intent to distribute of more than fifty grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii). No. 10-CR-00344, ECF No. 102. The conviction arose from conduct that occurred while Defendant was on supervised release from a previous conviction for methamphetamine possession in 1998. *See generally* Opp. Ex. 1. On December 17, 2009, after Defendant allegedly committed a crime while on probation, the Court issued an arrest warrant for Defendant. Opp. Ex. 3 at 243–44. Defendant did not turn himself in, and eventually the United States Marshals Service ("Marshals") discovered that Defendant was residing at a friend's house along with his wife and daughter. *Id.* at 247–48. On January 5, 2010, Marshals approached the house and saw Defendant leave with his wife and daughter. *Id.* at 255. Marshals arrested Defendant away from the house, and at the same time other Marshals entered the house, carried out a protective sweep searching for people, and secured the premises. Opp. Ex. 2, Ex. 3.

Soon afterward, probation officers, including Defendant's probation officer, Sonia Lapizco ("Lapizco"), entered the home to search the room that Defendant had been using, which had previously been used by the homeowner Martin Garfias's ("Garfias") son, Rene Villa. Opp. Ex. 3, at 272. One probation officer, Noel Belton ("Belton"), found a duffel bag on the floor of the room, and upon searching it, found a knit cap with the words "Goons" and "MC" on it. Inside the cap, Belton found a plastic bag containing methamphetamine. *Id.* at 363–72. Lapizco entered the room soon afterward and recognized the cap and other clothing in the duffel bag as belonging to Defendant. Opp. Ex. 2, at 431–35, 467. Rene Villa then entered the room and tried to remove a storage bin. *Id.* at 463–65, 467–68. Lapizco told Rene Villa to put the storage bin back and then searched the bin, in which she found a gun. *Id.* at 463–68; Ex. 5 at 376.

Before he was indicted, Defendant engaged in a proffer session with the United States Attorney's Office in which he admitted that he possessed the methamphetamine that had been

2

Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

found in the cap. Opp. at 5. During this proffer session, Defendant stated that on the day of the search, Garfias asked Defendant to weigh and deliver the methamphetamine. Opp. at 6. Defendant stated that he refused to deliver the methamphetamine but agreed to weigh it. *Id.* After he weighed the methamphetamine, Defendant claimed that he placed the methamphetamine in his cap in the duffel bag and was arrested shortly thereafter. *Id.* The proffer agreement stated that the Government was permitted to use Defendant's statement to rebut any of Defendant's evidence or factual assertions or, if Defendant testified, for any purpose. *Id.*

The instant criminal case was originally assigned to Judge D. Lowell Jensen. The trial was conducted before Judge Jensen. At trial, in order to avoid giving the Government the opportunity to introduce Defendant's proffered confession as evidence, Defendant's trial attorney, Peter Leeming ("Leeming"), "made the deliberate decision to focus Mr. Pedregon's trial defense on the argument that the bedroom where the methamphetamine was found was not secured during the probation search, such that the drugs could not necessarily be tied to Mr. Pedregon." Opp. Ex. 15 at 2. After a three day trial, Defendant was convicted of possession of more than 50 grams of methamphetamine with intent to distribute. No. 10-CR-00344-DLJ-1, ECF No. 97–102.

**B. Procedural Background**

The instant criminal case was initially assigned to Judge D. Lowell Jensen, who sentenced Defendant on March 29, 2012 following Defendant's conviction for possession with intent to distribute of more than fifty grams of methamphetamine. ECF No. 51. On October 20, 2014, Defendant filed the instant motion to vacate his sentence pursuant to 28 U.S.C. § 2255. ECF No. 54; CIV ECF No. 1. After Judge Jensen retired from the Court on October 30, 2014, the instant case was reassigned to Judge Beth Labson Freeman. ECF No. 55.

In response to an order by Judge Freeman on December 2, 2014, ECF No. 56, Defendant filed a memorandum setting forth facts in support of his claims on December 29, 2014. ECF No. 57 (Memorandum of Fact and Law in Support of Motion to Vacate Under 28 U.S.C. § 2255). On January 27, 2015, Judge Freeman ordered the Government to respond to Defendant's motion. ECF No. 58. On March 13, 2015, Judge Freeman recused herself from the case, ECF No. 59, and on

3
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

March 19, 2015, the case was reassigned to the undersigned judge, ECF No. 61.

On March 30, 2015, the Government moved for an order finding waiver of Defendant's attorney-client privilege in connection with the Government's response, ECF No. 62. The Court granted this motion on October 16, 2015, ECF No. 67, and in response to a "Notice" from the Government requesting clarification of the Court's order, ECF No. 69, the Court confirmed the waiver of attorney-client privilege on January 20, 2016, ECF No. 70. The Government thereafter filed its Opposition ("Opp.") on June 27, 2016, ECF No. 77, which included the declaration of Defendant's prior defense counsel ("Leeming Decl."), ECF No. 82-2. Defendant filed a reply on July 29, 2016 ("Reply"). ECF No. 85.

## II. LEGAL STANDARD

### A. Standard of Review

A Section 2255 motion to set aside, correct or vacate a sentence of a person in federal custody entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Under Section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, unless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (internal quotation marks and alterations omitted). A court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Accordingly, an evidentiary hearing is required only if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief. *See Howard*, 381 F.3d at 877.

### B. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the two-part test set forth in

4
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on such a claim, Defendant must show: (1) that counsel's representation fell below the range of competence demanded of attorneys in criminal cases; and (2) that Defendant was prejudiced by counsel's representation. Courts may address the two prongs of the Strickland test in whichever order is most efficient and need not address one prong if the other prong is lacking. *Id.* at 697. The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to demonstrate prejudice, Defendant must "show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## III. DISCUSSION

Defendant challenges his sentence on three grounds. First, Defendant argues that he had ineffective assistance of counsel at trial. Second, Defendant argues that his conviction was marred by government misconduct. Third, Defendant argues that the evidence introduced at trial was insufficient to convict him as a matter of law. The Government responds to each of these arguments and also argues that the Court should issue sanctions under Federal Rule of Civil Procedure 11 against Defendant. The Court first addresses the Government's argument for Rule 11 sanctions and then addresses each of Defendant's arguments in turn.

### A. Rule 11 Sanctions

In its opposition to the instant motion, the Government argues that Defendant's "Motion and supporting Memorandum contain deliberately altered documents and material omissions which amount to a fraud upon the Court and merit dismissal of his Motion." Opp. at 13. Specifically, the Government claims that Defendant cites to several documents that were altered to omit material that does not support the proposition for which Defendant cited the documents. *Id.* In one case, the Government claims that Defendant omitted several paragraphs of material in the middle of a document. *Id.* at 14–15. In at least two other cases, the Government claims that Defendant omitted important pages from documents. *Id.* Finally, the Government claims that Defendant has improperly failed to inform the Court that Defendant admitted to possessing the
5
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

methamphetamine at issue in this case during a proffer session. *Id.*

The Court has reviewed the documents and finds that in some cases, Defendant made material omissions. In attaching the Defense Interview of Julio Villa, Defendant removed certain paragraphs that undermined his argument that the Marshals conducted a thorough search before Probation Officers arrived. Mot. Ex. 4. Most particularly, Defendant omitted Julio Villa's statement that "the Marshals were just going in and just looking around but . . . he saw Probation go in there and actually search." Opp. Ex. 13, at 2; *see also* Mot. Ex. 4 (omitting this statement). Similarly, the portion of the Report of Marc Harwell ("Harwell Report") that Defendant cites omits the first and third pages of the report, which contain material that arguably undermines Defendant's argument that Marshals conducted a thorough search before Probation Officers arrived. Opp. Ex. 17, at 3 (containing the statement that Marshals "held the scene until Probation arrived"); *see also* Mot. Ex. 2 (omitting the page containing this statement). Additionally, the Interview with Martin Garfias appears to be missing several paragraphs, and perhaps additional pages. Opp. Ex. 14. However, the full text of the Interview with Martin Garfias is not available, and therefore the Court is not able to determine whether the omissions were material.

The Government cites several cases in which courts have dismissed complaints of pro se litigants as a sanction for submitting fraudulent documents to the Court. In one case, *Adkins v. Cox*, 2014 U.S. Dist. LEXIS 29589 (D. Nev. Feb. 5, 2014), the court dismissed a case because a pro se litigant had forged a grievance form in an attempt to show that he had exhausted his administrative remedies for a claim. In another case, *Garza v. Chavez*, 2014 U.S. Dist. LEXIS 98896 (C.D. Cal. Mar. 4, 2014), the court dismissed a case with prejudice because the plaintiff had altered the date on a form to provide evidence that an injury had occurred later than it did. In each case that the Government cites, the litigant added material or forged entire documents.

In this case, in contrast, Defendant selectively omitted pages or paragraphs of documents that did not support his claims. Federal Rule of Civil Procedure 11 states that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge . . . the factual contentions have evidentiary support."

FED. R. CIV. P. 11(b). Defendant violated this provision by presenting papers that omitted material portions that undermined the "evidentiary support" for the "factual contentions" in Defendant's motion. *Id.* This behavior was improper, and in deciding Defendant's motion the Court will not consider the Defense Interview of Julio Villa or the Harwell Report because these documents contain material omissions. The Court will consider the Interview with Martin Garfias because the Government has not shown that Defendant's omissions from that document are material. However, the Court will consider the Interview of Martin Garfias with the understanding that the document is incomplete.

Nevertheless, the Court finds that summarily denying Defendant's motion is unnecessary. The Government has cited no case in which a court has dismissed a claim as a sanction under similar facts. The Court therefore finds that the sanction of summary denial would go further than "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(3).

### B. Ineffective Assistance of Counsel

Defendant claims that Peter Leeming, his trial attorney, rendered ineffective assistance of counsel in violation of the Sixth Amendement. In order to establish ineffective assistance of counsel under *Strickland*, Defendant must establish (1) that counsel's representation fell below the range of competence demanded of attorneys in criminal cases; and (2) that Defendant was prejudiced by counsel's representation. *Strickland*, 466 U.S. at 687. The Court determines that Defendant has not established that he was prejudiced by counsel's alleged errors, and therefore the Court need not decide whether Leeming's representation fell below the relevant range of competence. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

For most of the alleged errors, Defendant has not even argued that the errors were prejudicial. The Court first considers those alleged errors. The Court then separately considers the one error for which Defendant has argued prejudice.

7
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

**1. Alleged Errors for Which Defendant Has Failed to Allege Prejudice**

For most of the errors that Defendant alleges Leeming committed, Defendant has not alleged any facts to show that the alleged errors prejudiced his defense. Instead, as to these alleged errors Defendant offers only the blanket statement that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial and direct appeal would have been different, establishing prejudice to Defendant." Mot. at 4. Specifically, Defendant makes no particular claim of prejudice for the following alleged errors:

- Failure to interview Defendant's wife about the fact that Garfias asked Defendant to help deliver methamphetamine and about the fact that Defendant was wearing his cap when he was arrested. Mot. at 5.
- Failure to obtain analysis results from the Santa Clara Crime Lab, which tested three of the five packages of methamphetamine. Mot at 5–6.
- Failure to investigate and use information showing that Defendant was not desperate for money because he had independent sources of income. Mot. at 6.
- Failure to investigate the fact that although Lapizco identified a particular garment in the duffel bag that contained methamphetamine as a pair of black jeans, the garment was in fact a black t-shirt. Mot at 6–7.
- Failure to investigate a telephone conversation between Defendant and Garfias in which Garfias agreed that Rene Villa kept some of his belongings in the room Defendant had been using. Mot. at 7–8.
- Failure to investigate two reports from Lapizco showing that before Defendant's arrest, Defendant had been looking for an attorney so that he could surrender himself. Mot. at 8–9.
- Failure to call Defendant's wife as a witness to testify that Garfias brought drugs into the bedroom, that she and Defendant were temporary guests in the room, that she and Defendant did not pay rent, that Rene Villa often entered the bedroom to retrieve items, and that she and Defendant established a repossession and car

8

Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

dealing service. Mot. at 10.

- Failure to call Rene Villa to testify that he owned many of the bags in the room where the methamphetamine was found. Mot. at 10–11.
- Failure to call Julio Villa to testify that U.S. Marshals searched the room for thirty minutes before Probation Officers arrived. Mot at 11–12.
- Failure to call CDCR Task Force Parole Agent Earl Baron, who was the first agent to search the room in which the methamphetamine was found. Mot. at 12.
- Failure to call any of the other agents who searched Garfias's home to offer unspecified testimony. Mot. at 12.
- Failure to call two houseguests present at the Garfias house at the time of Defendant's arrest, who would testify about facts relevant to the timing of the search. Mot. at 12.
- Failure to call United States Marshal Shobar, who would have testified that Lapizco told him that Defendant was a violent gang member and that Defendant's arrest was made a priority for this reason. Mot. at 12–13.
- Failure to introduce the Garfias 302 Report, which stated that Defendant was wearing his cap when he left the house before his arrest. Mot at 14.
- Failure to introduce evidence that Defendant did not surrender his cap at booking, which tended to show that the cap had been confiscated before Defendant was booked. Mot. at 14.
- Failure to introduce the Harwell 302 Report, which stated that Lapizco claimed that Defendant was violent. This statement allegedly caused Marshals to search areas of the Garfias home where someone might have access to a weapon. Mot. at 14.
- Failure to introduce an interview with Garfias in which Garfias stated that fifty United States Marshals searched his home. This testimony would tend to show that Marshals would have needed to go into the bedroom Defendant was using. Mot. at 14.

9
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

- Failure to introduce an interview with Julio Villa in which Julio Villa stated that Rene Villa claimed to own bags in the room in which the methamphetamine was found and that Marshals searched the room for thirty minutes or more. Mot. at 14, 16.
- Failure to introduce a transcript of a telephone call between Garfias and Defendant in which Garfias stated that Marshals had found nothing during their search of the house and that Lapizco told officers, "let me go find what you guys couldn't find," before finding the methamphetamine and gun in the bedroom. Mot. at 14–15.
- Failure to introduce the Lapizco 302 Report, which stated that Rene Villa had tried to remove a plastic bin from the bedroom and that the gun was later found in the same bin. Mot. at 15.
- Failure to introduce the Lapizco Investigative Report, which stated that Lapizco found the methamphetamine in the cap in a duffel bag in plain view. Mot. at 16.
- Failure to introduce Lapizco's statement to San Jose Police stating that Lapizco found the gun and methamphetamine during her search of the room. Mot. at 16.
- Failure to introduce United States Marshal Shobar's statement that Lapizco found the gun and methamphetamine during her search of the room and that San Jose police took possession of the methamphetamine and the gun. Mot at 16.
- Failure to introduce statements from Lapizco's testimony at Defendant's preliminary revocation hearing in which Lapizco stated that she found the methamphetamine and gun in Defendant's bedroom, that she did not know whose clothing was in Defendant's room, and that she ran a background check on Rene Villa and found that he had been convicted for statutory rape. Mot. at 17.
- Failure to introduce documents showing that Rene Villa had previously been arrested while wearing black jeans, which might suggest that he owned the duffel bag in which the methamphetamine was found. Mot. at 18.

Other than a blanket statement that the standard for prejudice is met, Defendant has offered

10

no indication that the above errors were prejudicial. Defendant does not describe the relevance of the evidence and testimony, and Defendant does not explain how any of the investigations would have led to evidence that would have been helpful to his defense. Instead, Defendant simply offers a long list of evidence and leaves the Court to speculate about how that evidence, if introduced, could have resulted in a different result in his case.

This is not sufficient to show prejudice under *Strickland*. It is Defendant's burden to demonstrate that errors were prejudicial. Defendant's conclusory statement that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial and direct appeal would have been different" does not satisfy that burden. *See United States v. Aguilar*, 851 F.2d 361 (9th Cir. 1988) (unpublished) ("Aguilar has not alleged sufficient prejudice to satisfy *Hill.* Although Defendant states, in conclusory fashion, that he would not have entered a plea without counsel's assurances of a short prison term, such allegations are insufficient to warrant an evidentiary hearing."); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) ("Merely conclusory statements in a § 2255 motion are not enough to require a hearing.") (quoting *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir.1980)).

Defendant's recitation of alleged errors does not fulfill Defendant's burden to show prejudice. *See Lyons v. Henry*, 176 F.3d 483 (9th Cir. 1999) (unpublished) ("We will not, therefore[,] presume prejudice. Because Lyons has not alleged actual prejudice, his claim of ineffective assistance of counsel . . . must fail."); *Gilbert v. United States*, 951 F.2d 359 (9th Cir. 1991) ("[The defendant] has not alleged any prejudice from his counsel's failure to object. Accordingly, the district court properly dismissed the motion as to this claim.").

However, even if Defendant had argued that Leeming's failures prejudiced Defendant's case, Defendant would not have succeeded in demonstrating prejudice.

In the instant motion, Defendant offers for the first time the theory that Defendant did not possess the methamphetamine, but instead that Lapizco planted the methamphetamine in Defendant's cap after Defendant broke off a romantic relationship with Lapizco. Mot. at 34. Much of the evidence that Defendant believes that Leeming should have introduced is apparently meant

11
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

to prove this theory. Specifically, the testimony of CDCR Task Force Parole Agent Earl Baron, the testimony of other agents who searched Garfias's home, the testimony of Garfias's houseguests, the testimony of United States Marshal Shobar, the Garfias 302 Report, Defendant's booking records, the Harwell 302 Report, the interview with Garfias, the interview with Julio Villa, the Lapizco investigative report, various statements by Lapizco, and the alleged investigative leads about Defendant's wife and the misidentification of a black t-shirt all appear to be relevant to this theory. Defendant argues that all of this evidence tends to show that on the day of his arrest, Marshals took Defendant's cap from his head and gave it to Lapizco, who then placed the methamphetamine inside the cap. Mot. at 34.

However, if Defendant had introduced any of this evidence as part of an argument that the methamphetamine was planted and did not belong to Defendant, the Government would have been able to introduce Defendant's previous testimony that the methamphetamine did belong to Defendant. Case 5:10-CR-0034-DLJ, ECF No. 76-2. Thus, by proffering a confession to the United States Attorney's Office, Defendant limited the trial strategies that his lawyer could pursue. As Leeming states in his declaration, "Mr. Pedregon's proffered statements limited his defense arguments at trial . . . . Accordingly, I made the considered and deliberate decision to focus Mr. Pedregon's trial defense on the argument that the bedroom where the methamphetamine was found was not secured during the probation search, such that the drugs could not necessarily be tied to Mr. Pedregon." *See* Declaration of Peter Leeming.

In short, Defendant has alleged that Leeming made many mistakes during the trial, but Defendant never describes how these alleged mistakes prejudiced Defendant. Thus, Defendant has not demonstrated a "reasonable probability" that "the result of the proceeding would have been different" if the alleged errors had not occurred. *Strickland*, 466 U.S. at 694. It is Defendant's burden to prove prejudice, and therefore Defendant's failure to meet this burden means that Defendant cannot prevail on his claim for ineffective assistance of counsel based on these alleged mistakes. *See Gilbert v. United States*, 951 F.2d 359 (9th Cir. 1991) ("[The defendant] has not alleged any prejudice from his counsel's failure to object. Accordingly, the district court properly

12

Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

dismissed the motion as to this claim.").

**2. Alleged Error for Which Defendant has Alleged Prejudice**

The only alleged error for which Defendant attempts to argue prejudice is Leeming's failure to introduce an independent report from Forensic Analytical Sciences (FAS) about the weight of the methamphetamine that Defendant was convicted of possessing. Mot. at 21. Defendant claims that on June 5, 2013, Defendant received a box of documents from his appellate counsel, "including documents from [an] independent drug analysis conducted by Forensic Analytical Sciences ('FAS')." Mot. at 7. Defendant claims that these documents showed that "actual meth" was present in the substance that Defendant possessed at a "concentration of 52%, which is dramatically different from the DEA analysis of 95%." *Id.* Defendant claims that "[a]t 52% of actual meth, Defendant's sentencing range would have been below the 10-year statutory minimum, demonstrating prejudice to Defendant." *Id.* Defendant further claims that these documents were available to Leeming at trial. *Id.*

If the introduction of this evidence was reasonably likely to result in a shorter sentence for Defendant, failure to introduce it would be prejudicial under *Strickland*. *See United States v. Grageda-Chavez*, 95 F.3d 1159, at *1 (9th Cir. 1996) (table case) (finding ineffective assistance of counsel because lawyer had failed to introduce evidence when "there was a reasonable probability that there would have been a shorter sentence" if the evidence had been introduced). Therefore, the Court next discusses whether introducing this evidence would likely have led to a shorter sentence for Defendant.

The FAS report to which Defendant refers reports an analysis of two items, which Defendant claims were the bags of methamphetamine for which he was convicted. Mot. Ex. 9, ECF No. 57, at 81. The FAS report states, "analysis of item #1 determined the presence of methamphetamine at approximately 52%. When calculated as hydrochloride, methamphetamine was determined to be approximately 65%. . . . Analysis of item #2 determined the presence of methamphetamine at approximately 53%. When calculated as hydrochloride, methamphetamine was determined to be approximately 66%." *Id.*

13
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

21 U.S.C. § 841, the statute under which Defendant was convicted, sets a mandatory minimum sentence of ten years for any person possessing "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers." 21 U.S.C. § 841(b)(1)(A)(viii). Methamphetamine hydrochloride is a salt of methamphetamine, and therefore the ten year statutory minimum applies if the entire weight of methamphetamine hydrochloride, and not merely the weight of methamphetamine alone, was at least 50 grams. *See United States v. Brinton*, 985 F.2d 575, 1993 U.S. App. LEXIS 1627, at *13 (9th Cir. Jan. 21, 1993) (unpublished) ("The [Defendants] explain at length the chemical difference between methamphetamine and methamphetamine hydrochloride and ephedrine and ephedrine hydrochloride. They fail to recognize, however, that . . . [b]ecause both hydrochlorides are salts of the substances, they are included in the legal definition of methamphetamine and ephedrine."); *United States v. Payton*, 92 F.3d 1195, 1996 U.S. App. LEXIS 18955, at *14 (9th Cir. Jul. 1, 1996) (unpublished) ("[M]ethamphetamine hydrochloride ('crystal meth') is, in fact, 'pure' methamphetamine.").

The FAS report shows that the items analyzed were determined to be 31 grams of white powder (item 1) and 58.3 grams of white powder (item 2). Item 1 was determined to be 65% methamphetamine hydrochloride, yielding a mass of 20.15 grams of methamphetamine hydrochloride. Item 2 was determined to be 66% methamphetamine hydrochloride, yielding a mass of 38.47 grams of methamphetamine hydrochloride. This yields a total mass of 58.62 grams of methamphetamine hydrochloride, which is more than enough to trigger the ten year statutory minimum sentence.

Therefore, even if Leeming had introduced the FAS report and the report had been admitted and accepted as fact, Defendant would still have been subject to a ten year minimum sentence. Indeed, this is precisely why Leeming decided not to introduce this evidence. In his declaration, Leeming states, "I obtained the drug analysis from Forensic Analytical Sciences (FAS) and investigated whether to introduce it at trial, but determined that the non-salt methamphetamine purity calculation cited by Mr. Pedregon would not hold up to a legal challenge because it has been rejected by courts in the Ninth Circuit." Opp. Ex. 15 at 6. Because Defendant

14

cannot show that his sentence would have been different if the FAS report had been introduced, he cannot demonstrate that failure to introduce the report prejudiced his defense.[1]

Defendant has failed to show that his lawyer's alleged mistakes prejudiced Defendant's defense, and therefore the Court DENIES Defendant's motion to vacate his sentence on the grounds of ineffective assistance of counsel.

**C. Governmental Misconduct**

Defendant next argues that his sentence should be vacated under § 2255 because his prosecution was marred by "perjury by Government witnesses, fabrication of false evidence, suppression of exculpatory evidence, and suppression of impeachment evidence, which has denied Defendant [] his [right to] due process of law." Mot. at 24–25. Defendant's claim of governmental misconduct is based on his allegation that Lapizco retaliated against him because Defendant broke off a romantic relationship with Lapizco. Specifically, Defendant argues that Lapizco took or caused the Government to take the following retaliatory actions:

- Falsely asserted that Defendant is a member of the GOONS MC "outlaw motorcycle gang" and the "Norteno Street Gang." Mot. at 26–27

- Falsified probable cause from a non-existent Confidential Informant so that Marshals and Probation Officers could arrest Defendant and search the room in which he was staying.

- Conducted an illegal traffic stop of Defendant and falsified probable cause to confiscate a laptop and cell phone in Defendant's vehicle. Mot. at 32.

- Falsely asserted that Defendant was violent and likely to fight back during an arrest. Mot. at 33.

- Confiscated Defendant's cap, placed methamphetamine inside it, and planted the cap in the

---

[1] Although Defendant does not raise the issue, using the FAS report's purity measurements (65%-66%) rather than the purity measurements that Defendant claims the DEA used (95%) also would not have made a difference under the Sentencing Guidelines. The Sentencing Guidelines set a base offense level of 30 for crimes involving "at least 50 G but less than 150 G of Methamphetamine (actual)." United States Sentencing Guidelines Manual § 2D1.1(5). Using the FAS report's purity levels, as discussed above, the total mass would be 58.62 grams. Using a purity level of 95%, the total mass would be 84.84 grams. Either way, the amount falls between 50 and 150 grams, and the base offense level is therefore the same.

15
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

1    room Defendant had been staying in. Mot. at 34.

2    - Planted a gun in a plastic bin in the room in which Defendant had been staying. Mot. at
3      34–35.

Defendant raised none of these claims in the trial below or on appeal. In fact, Defendant never even told his lawyer about these claims. Leeming has stated that "[a]t no point in my discussions with Mr. Pedregon did he claim to have had a sexual relationship with USPO Sonia Lapizco, or that she had harassed him as a result of this purported failed relationship." Opp. Ex. 15, at 3.

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised [under § 2255] only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Court first considers whether Defendant has established "cause" and "prejudice." The Court then considers whether Defendant has shown that he is "actually innocent."

### 1. Cause and Prejudice

In order to show cause for a procedural default, Defendant must establish that "some objective factor external to the defense" prevented him from raising these claims during trial or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In order to demonstrate prejudice, as discussed above, Defendant must show "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Defendant has made no attempt to establish either "cause" for his failure to raise his claims of governmental misconduct or "prejudice" from his failure to do so. Defendant does not assert that he ever attempted to introduce such evidence at trial, that the "factual or legal basis for [such] a claim was not reasonably available to counsel," or that "some interference by officials" prevented him from raising the claim. *Id.* (quoting *Brown v. Allen*, 344 U.S. 443, 486 (1953)). Defendant does not claim there are any facts or theories available to him now that were not available at the time of his trial or the time of his appeal. Defendant thus has not established that

16
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

he had cause for failing to raise his claims of government misconduct either in the trial below or on appeal. Because Defendant has not shown cause for failing to raise his claims earlier, the Court need not consider the prejudice prong. The Court thus finds that Defendant has procedurally defaulted his claims of governmental misconduct.

However, despite Defendant's procedural default, the Court may still consider Defendant's new evidence if the evidence shows that Defendant was actually innocent of the crime of which he was convicted.

### 2. Actual Innocence

Ordinarily, a defendant cannot raise an issue for the first time in a motion under § 2255 unless the defendant can establish "cause" for the procedural default. However, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Thus, although Defendant raises for the first time the arguments and evidence that he now asserts about governmental misconduct, the Court may consider whether these arguments and evidence are sufficient to show Defendant's actual innocence. In considering this new evidence, a court should grant Defendant's motion not merely upon "a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Defendant has fallen far short of showing actual innocence in this case. The most probative evidence on this issue is Defendant's confession, which Defendant does not claim was involuntary or otherwise unreliable. In this confession, Defendant stated that he did in fact possess the methamphetamine at issue.

Defendant's belated claims of a conspiracy to frame him, on the other hand, are patently incredible. At least thirteen deputy marshals and several probation officers were present during the search, and none have cast any doubt on Lapizco's account of how the methamphetamine was discovered.

Additionally, as the Government points out, Probation Officers work in pairs, and nearly all of Lapizco's meetings with Defendant were conducted along with another Probation Officer, Juan Ramirez. Opp. Ex. 24, at 4–5; Opp. Ex. 25, at 4–5. In these circumstances, the Court finds it exceedingly unlikely that Lapizco would have developed a romantic relationship with Defendant. The Court also finds the timing of these new allegations to be relevant. If these allegations were true, Defendant would most likely have raised the allegations during trial or on appeal.

Defendant makes much of the fact that before probation officers searched his room, deputy marshals had already entered the room. Defendant argues that if the methamphetamine had been in the room before Lapizco entered the room, deputy marshals would have found it. However, a declaration from United States Marshall Marc Harwell ("Harwell") states that when the Marshals entered the room, they conducted only a "protective sweep" searching for people, not evidence. Opp. Ex. 3, at 291:1–23. Thus, it is not at all surprising that the methamphetamine was not found until probation officers, including Lapizco, arrived to conduct a full search for evidence.

In short, none of the evidence that Defendant offers establishes that Defendant is actually innocent. Therefore, the court DENIES Defendant's motion to vacate his sentence on the ground of actual innocence.

**D. Insufficient Evidence**

Finally, Defendant claims that there was "insufficient evidence to support a finding of guilt[] beyond a reasonable doubt." Mot. at 21. However, a defendant who raises an issue on direct review of a verdict cannot raise the same issue to attack the verdict through a § 2255 motion. *See United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition."); *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) ("[Defendant] raised this precise claim in his direct appeal, and this court expressly rejected it. Therefore, this claim cannot be the basis of a § 2255 motion.").

In the instant case, Defendant "challenge[d] the sufficiency of the evidence" on appeal. *United States v. Pedregon*, 520 F. App'x 605, 608 (9th Cir. 2013). The Ninth Circuit addressed

18
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

this claim. Specifically, the Ninth Circuit reviewed the issue for "plain error" because Defendant did not move for acquittal at trial and found that "[i]n this case, there was substantial evidence to support the verdict." *Id.*

The Ninth Circuit's resolution of this question means that it is "the law of this case" that the evidence presented at Defendant's trial was sufficient for a jury to convict Defendant. *Hayes*, 231 F.3d at 1139. The Court cannot revisit the question of the sufficiency of the evidence, and therefore the Court DENIES Defendant's motion to vacate his sentence based on insufficiency of the evidence.

**D. Hearing**

A court need not hold an evidentiary hearing where a prisoner's allegations either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir.1996); *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir.1989), *cert. denied*, 493 U.S. 869 (1989); *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir.1984), *cert. denied*, 470 U.S. 1058 (1985). Accordingly, an evidentiary hearing is not required if: (1) a petitioner fails to allege specific facts, which, if true would entitle him to relief; or (2) the petition, files, and record of the case conclusively show that the petitioner is entitled to no relief. *Howard*, 381 F.3d at 877.

In the instant case, Defendant makes new allegations that Lapizco and other government agents engaged in a wide-ranging conspiracy to frame him for possessing methamphetamine. However, as discussed above, the petition, files, and record of the case show that Defendant has not established a claim for ineffective assistance of counsel, has not shown good cause for failing to introduce Defendant's new claims in the trial court or on appeal, has not shown Defendant's actual innocence, and has not shown that Defendant was convicted with insufficient evidence. In short, the record of the case conclusively establishes that Defendant is not entitled to relief, and a hearing is thus unnecessary.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's motion to vacate his sentence under 28 U.S.C.

19
Case No. 09-CR-00586-LHK-1
ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

§ 2255 is DENIED.

**IT IS SO ORDERED.**

Dated: August 24, 2017

_____
LUCY H. KOH
United States District Judge